UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| TAVIS TYRONE SHACKLEFORD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CV 05-B-1467-W |
| ) | |
| SONIC OF FAYETTE, L.L.C.; HJS ) | |
| INVESTMENTS, L.L.C., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

This case is presently pending before the court on defendants' Revised and Renewed Motion for Summary Judgment. (Doc. 29.)[1] Plaintiff Tavis Tyrone Shackleford has sued his former employer, defendant Sonic of Fayette, L.L.C., which is wholly owned by defendant HJS Investments, L.L.C., alleging that defendants discriminated against him on the basis of his race and his gender and that they retaliated against him for complaining about discrimination. Upon consideration of the record, the submissions of the parties, and the relevant law, the court is of the opinion that defendants' Revised and Renewed Motion for Summary Judgment, (doc. 29), is due to be granted.

## I. SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is

---

[1] Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and, therefore, evidence favoring the non-moving party is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the non-moving party need not be given the benefit of every inference but only of every **reasonable** inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## II. **STATEMENT OF FACTS**[2]

Defendants hired plaintiff as a cook on August 28, 2003. (*See* doc. 24 at 86, 94.) In April 2004, defendants hired Chrysti Tromba as Manager of the Fayetteville restaurant. (*Id*. at 86.) Tromba promoted plaintiff to Crew Leader effective May 10, 2004. (*Id*. at 87.)

Sometime after Tromba was hired, plaintiff approached her about a promotion to Assistant Manager. (Doc. 29 at 10-11.) Plaintiff testified that Tromba "laughed . . . off" the idea of promoting plaintiff to Assistant Manager. (*Id*.) Later, plaintiff again asked Tromba about being promoted to Assistant Manager. Although there was no vacant Assistant Manager position, plaintiff testified that he asked Tromba about a promotion shortly before defendants terminated one of their Assistant Managers. (*Id*. at 16, 25.) He testified that Tromba told him that he could not be promoted because of a "weed charge."[3] (*Id*. at 16.) He also testified that Tromba referred him to Tyrone Smith, a partner in defendant HJS Investments.[4] (*Id*. at 16, 35.)

---

[2] The Statement of Facts is drawn from the evidence viewed in the light most favorable to plaintiff, the non-moving party, and all justifiable inferences have been drawn in her favor.

[3] Plaintiff plead guilty to a misdemeanor charge of possession of marijuana in December 2002. (Doc. 33, Ex. D at 21.)

[4] The court notes that Smith, like plaintiff, is a black male. "[A] Title VII violation may occur even where a supervisor or decision-maker is of the same race as the alleged victim." *United States v. Crosby*, 59 F.3d 1133, 1135 n.4 (11th Cir. 1995)(citing *Billingsley v. Jefferson County*, 953 F.2d 1351, 1353 (11th Cir. 1992)); *see also Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 78 (1998)("[W]e have rejected any conclusive presumption that an employer will not discriminate against members of his own race.") (citing, *inter alia*, *Castaneda v. Partida*, 430 U.S. 482, 499 (1977)).

Smith testified that Tromba had told him that plaintiff had asked about a promotion to Assistant Manager. (*Id*. at 43.) He told Tromba that plaintiff was "not qualified to be Assistant Manager" because he had only worked as a cook, he had leadership problems – he was "part of employees instead of management team" as Crew Leader, and he did not have good work habits, including the fact that had "refused to comply with the . . . dress code." (*Id*. at 43-44; doc. 24 at 100-01.) Smith testified that he told Tromba he "would not promote [plaintiff ] to an Assistant Manager position. (Doc. 24 at 100-01.)

During the time Tromba was Store Manager, defendants had three female Assistant Managers: Tiffany Wheeler, white; Tina Queen, white; and Robin Wilson, African-American. (Doc. 33, Ex. D at 33, 36-38, 81.) Plaintiff contends he was more qualified than the women promoted to Assistant Manager because he "had to train the assistant managers." (Doc. 34 at 19-20.)

In August 2004, Tromba asked plaintiff if he had filed a discrimination charge and he told her he had not. (Doc. 29 at 20-21.) In September or October, Tromba also asked Amanda Worrell, a Crew Leader,[5] if plaintiff had a lawyer or had filed a charge of discrimination. (Doc. 33, Ex. A ¶ 7.) Worrell denied any knowledge of a discrimination charge. (*Id.*)

---

[5]Plaintiff contends that Worrell was an Assistant Manager; however, her affidavit states that she was a Crew Leader at this time. (Doc. 33, Ex. A ¶ 2.

On October 26, 2004, Tromba completed an "Employee Corrective Action Plan," regarding plaintiff's "Performance" and "Conduct." (Doc. 24 at 93.) She described plaintiff's conduct as follows:

> Tyrone was asked why he hasn't been filtering and he stated because night shift doesn't do it, so I'm not. I said so because someone doesn't do [their] job so [you're] not. He [proceeded] to start an argument, so I sent him home for the rest of the day.

(*Id*.) For the "Correct Action Plan," Tromba wrote:

> I have been short handed on night shift. So Tyrone always complains about night shift's work so I decided to put him on night shift until I can find more help. Tyrone used to be on night shift.

(*Id*.)

Plaintiff testified that he was terminated at this time. He stated:

> Q. How did you learn about your termination? . . .
>
> A. . . . That day that she told me to get out – that she told me to leave, that how I knew I was terminated.
>
> . . .
>
> Q. Why did she say she was terminating you?
>
> A. Well, we were having a little discussion, and she told me if I didn't – she said, Well, since you don't like it, go home.
>
> Q. Don't like what?
>
> A. The discussion we were talking about, I don't know if it was about the way she was running both shifts, the way she was treating my shift and treating her night shift. I don't know if it was that discussion or – it was a discussion related to that matter or whatever; she told me if I didn't like it, bye, gone, sent me home.

5

(Doc. 29 at 20.)  Plaintiff testified that he was on day-shift at the time of his termination. (*Id*.).

Tina Queen, an Assistant Manager, prepared Employee Corrective Action Plans for plaintiff's failure to work two night shifts on October 27th and 28th.  (Doc. 24 at 94-95.) Tromba signed both Corrective Action Plans, noting that plaintiff had called in, but that he had not given a reason for his absence.  (*Id*.)  On October 29th and 30th, Tromba completed Employee Corrective Action Plans, stating that plaintiff had neither called in nor shown up for work.  (*Id*. at 96-97.)  On the October 30th Corrective Action Plan, she indicated that plaintiff was terminated.  (*Id*. at 97.)

In his deposition, plaintiff testified, "[I] [d]ispute that I didn't show up or didn't call in.  I probably wasn't on the schedule.  I can't recall that date."  (Doc. 33, Ex. D at 61.)

On December 3, 2004, plaintiff filed a Charge of Discrimination with the EEOC. (Doc. 1 ¶ 8.)

### III.  DISCUSSION

**A.  PROMOTION CLAIM**

Plaintiff claims that he was not promoted to the position of Assistant Manager despite his qualifications because of his race and his gender.  Defendants contend that plaintiff was not selected for the position of Assistant Manager because he did not have good work habits and because he lacked leadership.

In order to establish a prima facie case of discrimination, plaintiff bears the burden of establishing that he is a member of a protected class, that he is qualified and applied for the promotion, that he was rejected despite his qualifications, and that someone outside the protected class was selected for promotion.  *See Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1089 (11th Cir. 2007).  If plaintiff establishes a prima facie case of discrimination, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason or reasons for its decision.  *Id*.  Then, plaintiff must rebut defendant's reason or reasons either (1) by presenting evidence that discrimination was the real reason for the decision, or (2) by presenting evidence that defendant's reasons are "unworthy of credence."  *Cooper v. Southern Co.*, 390 F.3d 695, 725 (11th Cir. 2004), *cert. denied* 546 U.S. 960 (2005).

> To survive summary judgment, the employee must come forward with evidence sufficient to permit a reasonable fact finder to conclude that the legitimate reasons given by the employer were not its true reasons, but were a pretext for discrimination.  This evidence must reveal such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence.

*Vessels v. Atlanta Independent School System*, 408 F.3d 763, 771 (11th Cir. 2005)(internal quotations and citations omitted).

For purposes of deciding defendants' Motion for Summary Judgment, the court assumes a prima facie case of discrimination.

Defendants contend that Smith decided not to promote plaintiff to the position of Assistant Manager because plaintiff did not have good work habits and because he lacked

7

leadership. Plaintiff responds that he was a good worker and that he was more qualified than those selected for the position. (Doc. 34 at 19-20.) In the context of a promotion claim, plaintiff must show that the disparity between his qualifications and those of the selected employees were "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff." *Id*. at 723.

Plaintiff cannot establish that he was so much more qualified than those selected for the Assistant Manager positions as to prove that Smith could not have chosen the selected Assistant Managers in the exercise of impartial, nondiscriminatory judgment. The only evidence plaintiff offers of his comparators' qualifications is the fact that he trained them. Plaintiff does not rebut – "head on" – defendants' evidence that he lacked leadership and that he had poor work habits, including his failure to comply with the dress code. Under the circumstances, plaintiff's testimony that he was highly qualified is insufficient to establish pretext. *See Brooks v. County Commission*, 446 F.3d 1160, 1163-64 (11th Cir. 2006)(quoting *Alexander v. Fulton County*, 207 F.3d 1303, 1339 (11th Cir. 2000)); *see also Gaddis v. Russell Corp.*, 242 F. Supp. 2d 1123, 1137 (M.D. Ala. 2003)("Although the Plaintiff produced some evidence of her advantageous qualities – a graduate degree, positive remarks from superiors, and training new employees on the computer software – she has not established that her qualifications were so superior to those of [her comparators] that a

reasonable juror could infer discriminatory intent from a comparison of their respective credentials.").

Therefore, the court will grant defendants' Revised and Renewed Motion for Summary Judgment as to plaintiff's promotion claim, and it will dismiss such claim.

## B. TERMINATION

Plaintiff contends that defendants terminated him because he engaged in protected activity. (*See* doc. 29 at 19.) Defendants contend that the decision maker, Tromba, was unaware plaintiff had engaged in protected activity and that Tromba terminated plaintiff for a legitimate, non-retaliatory reason – his failure to come to work.

In order to establish a prima facie case of retaliation in violation of Title VII, plaintiff must establish: (1) a statutorily protected expression; (2) an adverse employment action; and (3) a causal link between the protected expression and the adverse action. *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 919 (11th Cir. 1993). "The causal link element is construed broadly so that a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001)(internal citations and quotations omitted). "Once a plaintiff has established a prima facie case, the employer then has an opportunity to articulate a legitimate, non-retaliatory reason for the challenged employment action. The ultimate burden of proving by a preponderance of the evidence that the reason provided by the

9

employer is a pretext for prohibited, retaliatory conduct remains on the plaintiff." *Id.* (citations omitted).

The evidence shows that plaintiff contacted the EEOC in August 2004, complaining that he was not promoted because of his race and gender. This is protected activity. Thereafter, on or before October 30, 2004, plaintiff was terminated. Termination is an adverse employment action. Therefore, the remaining question is whether plaintiff has establish a causal connection between his protected activity and his termination.

> To establish the causal connection element, "a plaintiff need only show 'that the protected activity and the adverse action were not wholly unrelated.'" *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1354 (11th Cir. 1999)(quoting *Simmons v. Camden County Bd. of Educ.*, 757 F.2d 1187, 1189 (11th Cir. 1985)). ***In order to show the two things were not entirely unrelated, the plaintiff must generally show that the decision maker was aware of the protected conduct at the time of the adverse employment action.*** See *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993); *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1197 (11th Cir. 1997)("[I]n a case involving a corporate defendant the plaintiff must show that the corporate agent who took the adverse action was aware of the plaintiff's protected expression . . . ."). That requirement rests upon common sense. A decision maker cannot have been motivated to retaliate by something unknown to him. As with most facts, the defendant's awareness can be established by circumstantial evidence. *See Goldsmith*, 996 F.2d at 1163.
>
> The general rule is that close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection. *See Gupta*, 212 F.3d at 590; *Bechtel Constr. Co. v. Secretary of Labor*, 50 F.3d 926, 934 (11th Cir. 1995)("Proximity in time is sufficient to raise an inference of causation."). However, there is this exception: temporal proximity alone is insufficient to create a genuine issue of fact as to causal connection where there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct. *See Clover*, 176 F.3d at 1355-56.

*Brungart v. BellSouth Telecommunications, Inc.*, 231 F.3d 791, 799 (11th Cir. 2000).

The court finds sufficient circumstantial evidence that Tromba was aware of plaintiff's discrimination complaints. She asked plaintiff if he had filed a charge of discrimination. Also, in September or October, she specifically asked Worrell whether plaintiff had a lawyer and whether he had filed a charge. The fact that neither plaintiff and Worrell confirmed plaintiff had filed a charge of discrimination is not sufficient to show, as a matter of law, that Tromba was unaware of plaintiff's protected activity. If a reasonable jury believed Tromba questioned Worrell shortly before plaintiff was terminated, they could infer that Tromba was aware of plaintiff's protected activity.

The court finds plaintiff has presented sufficient evidence of a prima facie case of retaliation.

Defendants contend that plaintiff was terminated because he failed to show up for work on two consecutive nights, after he had called in the two previous nights. Failure to show up for work is a legitimate, nonretaliatory reason for defendants' decision to terminate plaintiff. *See Humphrey v. Sears, Roebuck, and Co.*, 192 F. Supp. 2d 1371, 1375 (S.D. Fla. 2002)(citing *Pollard v. Rea Magnet Wire Co.*, 824 F.2d 557, 559 (7th Cir. 1987); *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1228 (11th Cir. 1993)). Therefore, to survive defendants' Motion for Summary Judgment, plaintiff must present evidence that defendants' articulated reason for his termination is unworthy of credence.

11

Plaintiff testified that he "disputes" that he did not show up for work. (Doc. 33, Ex. D at 60-61.) He testified he "probably wasn't on [the] schedule," but that he could not "recall that date." (*Id*. at 61.) Indeed, plaintiff testified that he was terminated before he was placed on the night shift, the day Tromba sent him home. His deposition testimony, however, is not sufficiently specific to rebut defendants' articulated reason. His testimony, that he did not remember but he "probably" was not scheduled to work, is insufficient to rebut defendants' articulated reason for his termination – that he failed to show up for work.

Because plaintiff has failed to produce sufficient evidence to rebut defendants' articulated reason for his termination, the court will grant defendants' Revised and Renewed Motion for Summary Judgment as to plaintiff's retaliation claim and such claim will be dismissed.

## **CONCLUSION**

For the foregoing reasons, the court is of the opinion that there are no material facts in dispute and that defendants are entitled to judgment as a matter of law. An Order granting defendants' Revised and Renewed Motion for Summary Judgment, (doc. 29), will be entered contemporaneously with this Memorandum Opinion.

**DONE**, this the 30th day of March, 2008.

                                              *Sharon Lovelace Blackburn*
                                              SHARON LOVELACE BLACKBURN
                                              CHIEF UNITED STATES DISTRICT JUDGE